UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2020 JUL 27  PM 1: 03

CLERK

BY_____ʟᴀᴡ_____
DEPUTY CLERK

Laurie M.,                                    )
                                              )
            Plaintiff,                         )
                                              )
      v.                                       )      Case No. 2:18-cv-00094
                                              )
Commissioner, Social Security Administration, )
                                              )
            Defendant.                         )

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REVERSE THE
DECISION OF THE COMMISSIONER AND GRANTING THE
COMMISSIONER'S MOTION TO AFFIRM**
(Docs. 4 & 5)

Plaintiff Laurie Morrow ("Plaintiff") brings this action for Title II Social Security

Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA"). Plaintiff

moves to reverse the decision of the Social Security Commissioner (the "Commissioner")

that she is not disabled pursuant to 42 U.S.C. § 405(g) on the ground that Administrative

Law Judge ("ALJ") Thomas Merrill's determinations with respect to Plaintiff's mental

and physical limitations are not supported by substantial evidence. She seeks a remand

for the calculation of benefits. (Doc. 4.) The Commissioner moves to affirm. (Doc. 5.)

The court took the pending motions under advisement on January 7, 2019.

Plaintiff is represented by Craig A. Jarvis, Esq. Special Assistant United States

Attorney Peter Jewett represents the Commissioner.

**I.      Procedural Background.**

On March 1, 2013, Plaintiff applied for DIB, alleging a disability onset date of

November 1, 2011. Her claim was initially denied on April 17, 2013 and upon

reconsideration on July 5, 2013. Pursuant to Plaintiff's timely request, ALJ Merrill

presided over a hearing on September 17, 2014. Plaintiff was represented by counsel and

testified at the hearing, and vocational expert ("VE") Elizabeth McLean testified by

telephone. ALJ Merrill issued an unfavorable decision on December 8, 2014. Plaintiff timely appealed to the Office of Disability Adjudication and Review Appeals Council, which denied review on February 3, 2015. Thereafter, Plaintiff filed suit in this court seeking review of ALJ Merrill's December 8, 2014 decision. Magistrate Judge John M. Conroy remanded the case for further proceedings on January 30, 2017. A second hearing was held by videoconference on January 3, 2018, at which Plaintiff was again represented by counsel and at which Plaintiff and VE Lynn Paulson testified. On February 27, 2018 ALJ Merrill issued a second unfavorable decision which stands as the Commissioner's final decision. Plaintiff filed this action on June 7, 2018.

## II.     The ALJ's Application of the Five-Step, Sequential Framework.

In order to receive DIB benefits under the SSA, a plaintiff must be disabled[1] on or before her date last insured. Disability is determined using a five-step, sequential-evaluation framework that assesses:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)). "The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at [S]teps [O]ne through [F]our of the sequential five-step

---

[1] Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant's "physical or mental impairment or impairments" must be "of such severity" that the claimant is not only unable to do any previous work but cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

framework established in the SSA regulations[.]" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks and citations omitted). At Step Five, "the burden shifts to the Commissioner to show there is other work that the claimant can perform." *McIntyre*, 758 F.3d at 150 (internal brackets, quotation marks, and citation omitted).

Plaintiff was born on October 19, 1953 and was fifty-eight years old at the time of the alleged onset of her disability. She holds a bachelor's degree from the University of Vermont and a Ph.D. in English from the University of Kansas. Prior to the onset of her disability, Plaintiff worked full-time as a grant writer. Her other work experience includes positions as a university professor, fundraiser, public relations executive, and radio broadcaster. She claims disability due to "anxiety with panic attacks[,]" attention deficit disorder ("ADD"), depression, insomnia, a thyroid condition, transient ischemic attack ("TIA"),[2] high blood pressure, and an arthritic condition in her spine. (AR 147.) Plaintiff's last date insured was December 31, 2014.

At Step One, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since her alleged disability onset date of November 1, 2011. At Step Two, ALJ Merrill found that Plaintiff had severe medically determinable impairments of affective disorder, anxiety disorder, and "[ADD]/attention deficit hyperactivity disorder."[3] *Id.* at 497. The ALJ determined that Plaintiff's other alleged impairments imposed no more than minimal limitations on her ability to perform basic work activities for a continuous period of at least twelve months, and therefore were not severe.

At Step Three, ALJ Merrill found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of any listed impairment, observing that "[n]o accepted medical source . . . has offered an opinion that any of the

---

[2] A transient ischemic attack is "a transient decrease in the supply of blood to a localized region of the brain, resulting in some neurological disturbance, [such] as loss of memory." *Transient ischemic attack*, J.E. Schmidt, ATTORNEY'S DICTIONARY OF MEDICINE, Lexis (database updated October 2019).

[3] At the January 3, 2018 hearing, Plaintiff testified that she has "ADD but not hyperactive." (AR 532.) Nonetheless, several medical opinions in the record as well as the ALJ's decision refer to attention deficit hyperactivity disorder ("ADHD") as one of Plaintiff's impairments.

3

[Plaintiff's] impairments equal a section of the listed impairments[,]" that Plaintiff had not alleged her impairments equaled the severity of a listing, and that the record did not contain medical evidence to support a finding of listing-level severity. *Id.* at 503.

At Step Four, ALJ Merrill determined that Plaintiff had the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 C.F.R. [§] 404.1567(c). The [Plaintiff] has the ability to understand and carry out instructions. While the [Plaintiff's] persistence and pace may be affected on a temporary basis, it would not be to an unacceptable level. The [Plaintiff] could otherwise sustain concentration, persistence, and pace during the typical two[-]hour[] periods of an eight-hour workday and forty-hour workweek. The [Plaintiff] can tolerate routine and ordinary social interactions. The [Plaintiff] can set goals, recognize hazards, travel, and manage routine changes.

*Id.* at 506. The ALJ found that with this RFC, Plaintiff was capable of performing her past relevant work as a grant writer and college or university faculty member and therefore was not disabled from her alleged onset date of November 1, 2011, through her date last insured, December 31, 2014. Because the ALJ determined that Plaintiff was capable of performing past relevant work at Step Four, he did not reach Step Five of the disability analysis.

## III. Conclusions of Law and Analysis.

### A. Standard of Review.

The court "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013) (internal quotation marks and citation omitted). "Substantial evidence is 'more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre*, 758 F.3d at 149. Even where

"substantial evidence supporting the claimant's position . . . exists[,]" the ALJ's decision must be upheld if record also contains substantial evidence to support a contrary conclusion. *Jones v. Berryhill*, 415 F. Supp. 3d 401, 411 (S.D.N.Y. 2019) (citation omitted). "It is the function of the Secretary, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984) (internal quotation marks, brackets, and citation omitted).

> **B.      Whether ALJ Merrill's RFC Determination Concerning Plaintiff's Mental Impairments Is Supported By Substantial Evidence.**

Plaintiff disputes the ALJ's finding that her mental impairments would not affect her persistence and pace "to an unacceptable level[.]" (AR 506.) She further asserts that the ALJ erred by omitting restrictions that would limit Plaintiff to simple, routine, and unskilled work.

An RFC determination represents "the most [a claimant] can still do despite [her] limitations[,]" and is determined based on "all the relevant evidence" in the record, including evidence of both severe and non-severe medically determinable impairments. 20 C.F.R. § 404.1545(a)(1)-(2). The regulations provide that "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work and other work." 20 C.F.R. § 404.1545(c).

In evaluating a Plaintiff's ability to work, "[a]n ALJ is tasked with weighing all of the evidence available to make an RFC finding that is consistent with the record as a whole." *Lawton v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 378, 383 (W.D.N.Y. 2019) (internal quotation marks, brackets, and citation omitted). "[A]n ALJ is free . . . to choose between properly submitted medical opinions" in rendering his or her analysis, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (internal alterations, quotation marks, and citation omitted), and need not "reconcile every conflicting shred of medical testimony"

as long as the ALJ "acknowledge[s] relevant evidence or explains his implicit rejection of
it." *Falcon v. Apfel*, 88 F. Supp. 2d 87, 90 (W.D.N.Y. 2000) (citations omitted).

From February to December 2010, Plaintiff worked as a Director of Development
for the National Association of Scholars. In a questionnaire, Plaintiff's supervisor noted
that Plaintiff had "great difficulty" with learning job duties in the expected amount of
time, accepting instructions and reasonable criticism, asking questions, requesting help,
adapting to work changes, and performing repetitious tasks. (AR 181-82.) The supervisor
commented that Plaintiff was "[p]ersonable, friendly, [and] creative, but undisciplined
and not forthcoming with problems" and he "dismissed her for non-performance." *Id.*

Thereafter, Plaintiff worked part time for the Heritage Foundation from March
2011 through October 2011. On October 18, 2011, Plaintiff reported to her treating
psychiatrist, Alan Zaur, M.D., that she had lost her job, which she later attributed to
"personality conflicts" with her supervisor. *Id.* at 442. In November 2011, Dr. Zaur noted
that Plaintiff was taking Adderall for her ADD and that she had made contacts to do a
radio show.

In March 2012, Plaintiff went to the emergency room with symptoms of aphasia
and an altered mental state, although it was noted that Plaintiff's "slurred speech and
sense of [left] leg weakness had already improved markedly by arrival and fully resolved
at [discharge]." *Id.* at 292. Plaintiff was noted to be under significant stress as the "sole
breadwinner" in her family and as the parent of an autistic teenager. *Id.* She reported that
she was unemployed and spending twelve hours each day on the computer looking for
work. Plaintiff was diagnosed with a TIA and discharged with instructions to follow up
with her primary care physician.

In September 2012, Plaintiff reported to Dr. Zaur that she was doing some work as
a copywriter for an advertising agency based in Boston, but that she had experienced "a
deep depression" approximately one month earlier due to financial stressors and stressors
related to the care of her son. *Id.* at 357. By November 2012, Plaintiff's treating primary
care physician, Joseph Brock, M.D., noted that Plaintiff's "mood disorder ha[d] stabilized
under Dr. Zaur's care[,]" although Plaintiff reported a "gradual decline in her cognitive

function over the last [two] years[,]" including her word finding and vocabulary. (AR 335.)

On November 15, 2012, Plaintiff saw neurology specialist Deborah Black, M.D., for an initial evaluation due to her reported symptoms of short- and long-term memory problems, difficulty with organization, prioritizing, and completing projects, slow word retrieval, clumsiness, and irritability. Dr. Black found Plaintiff to be "[v]ery pleasant, alert, intelligent," and an "excellent historian" who displayed "[r]apid speech" and a "circumstantial, highly anxious, overinflected and dramatic interpersonal style[.]" *Id.* at 442. Dr. Black recommended that Plaintiff take antidepressants, but Plaintiff had opposed antidepressant medication because she had "seen ill adverse side effects in her son when he was treated with SSRI[s]." *Id.* at 329.

At an appointment with Dr. Brock on December 7, 2012, Plaintiff reported her depression had worsened, she remained unemployed, and she faced the potential loss of her home. She described feeling stress, sadness, hopelessness, and despair with occasional suicidal ideation, but stated that she did not have a suicidal plan. Dr. Zaur prescribed fluoxetine (Prozac), which led to a temporary improvement in Plaintiff's mood.

In a questionnaire administered by Dr. Black on December 12, 2012, Plaintiff indicated that she was "limited a little" in "[v]igorous activities, such as running, lifting heavy objects, [and] participating in strenuous sports[,]" but "not limited at all" in [m]oderate activities" such as moving a table, vacuuming, bowling, golfing, lifting and carrying groceries, climbing several flights of stairs, bending, kneeling, or stooping. *Id.* at 313. She felt she would be "limited a lot" in walking more than one mile. *Id.*

At the December 12, 2012 appointment, Dr. Black screened Plaintiff for neurocognitive problems and found that Plaintiff attained average scores in some areas of testing but scored in the low range for cognitive flexibility, executive functioning, and sustained attention, as well as in the very low range for working memory. The testing report indicated that Plaintiff's sustained attention and working memory results may have been invalid and recommended, "a clinician should evaluate whether or not the test

7

subject understood the test, put forth their best effort, or has a clinical condition requiring further evaluation." *Id.* at 309. Consistent with this guidance, Dr. Black noted that Plaintiff "may have misunderstood the test instructions on the[] latter two tests." (AR 307.) Dr. Black further observed that Plaintiff's performance "improved into the normal range" as the difficulty of the test increased, "suggesting that she was able to mobilize her attention sufficiently to perform well on the third, most challenging" portion. *Id.* at 308. Dr. Black concluded that Plaintiff's neurological functioning would not qualify her as disabled, but suggested that Plaintiff "may qualify for Disability on the basis of her affective symptoms[.]" *Id.* The ALJ found Dr. Black's opinion that Plaintiff could perform "a mid-level job without major organizational responsibilities" was supported by the results of mental status examinations and deserved "great weight" because it was within Dr. Black's area of expertise and because she examined Plaintiff on multiple occasions. *Id.* at 510.

In January 2013, Plaintiff's mood returned to her baseline, prompting Dr. Zaur to increase Plaintiff's dose of fluoxetine. In April 2013, Plaintiff attempted to switch medications but ultimately returned to fluoxetine after her depression worsened. By May 2013, Dr. Zaur's notes indicate that Plaintiff's mood was "much improved[,]" she reported she was "[f]eeling better than she ha[d] in months[,]" and she appeared to be her "[n]ormal happy self." *Id.* at 387-88. Plaintiff's mental status examinations yielded normal results through the remainder of 2013.

In July 2013, treating primary care physician Dr. Brock completed an RFC questionnaire in which he noted that Plaintiff's anxiety and inattention caused poor focus that interfered with her ability to perform one- to three-step tasks for two-hour periods and opined that her productivity would be reduced by twenty percent or more as a result. Dr. Brock further opined that Plaintiff could work twenty hours per week in a low stress job due to the limitations imposed by her anxiety, depression, and ADD.

In January 2014, Dr. Zaur observed that Plaintiff had a sad affect, but her mental function appeared intact. In March 2014, Plaintiff switched medications to Zyprexa and reported a good response. At an appointment with Dr. Brock in September 2014, Plaintiff

complained of decreased executive functioning, with difficulty following and completing simple instructions and short-term memory loss. Cognitive testing, however, revealed no deficits in the areas of attention/calculation, recall, and ability to follow a three-stage command. After Dr. Zaur closed his practice in February 2015, Dr. Brock prescribed Plaintiff trials of several other medications for her anxiety and depression. In February 2016, Plaintiff discontinued medication treatment for those conditions after reporting decreased anxiety and stress.

The ALJ afforded great weight to the opinion of non-examining state agency consultant Joseph Patalano, Ph.D., who opined in April 2013 that Plaintiff had moderate limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace, but had not experienced repeated episodes of decompensation for extended periods of time. He further opined that Plaintiff:

> May have episodic problems with concentration/pace due to ADHD and occasional increases in anxiety/depression associated with health and environmental stressors which temporarily undermine cognitive efficiency. Otherwise from a psych perspective, can sustain concentration/persistence/pace for [two-]hour periods over [eight-]hour day[s] through [a] typical work week.

(AR 52.)

Non-examining state agency consultant Roy Shapiro, Ph.D., reviewed the record on reconsideration in June 2013 and opined that Plaintiff "still [wa]s able to do [one] – [four] step tasks with the limitations suggested" in Dr. Patalano's assessment. *Id.* at 62. Dr. Shapiro adopted Dr. Patalano's earlier evaluation in full.

VE Paulson testified that Plaintiff's past relevant work is classified as skilled with either a sedentary or light level of exertion. She opined that a claimant with no physical limitations and the ability to understand, remember, and carry out detailed instructions with some temporary lapses in persistence and pace "not to an unacceptable level" who could tolerate ordinary social interaction, set goals, recognize hazards, and manage routine changes would be capable of performing Plaintiff's past relevant work as a grant writer or adjunct professor. *Id.* at 542. A claimant with the same limitations who was

9

further limited to four-step instructions would only be able to perform semi-skilled work, which would exclude Plaintiff's past relevant occupations.

In determining that Plaintiff may experience temporary problems with persistence and pace but "could otherwise sustain concentration, persistence, and pace during the typical two[-] hour[] periods of an eight-hour workday and forty-hour workweek[,]" *id.* at 506, the ALJ noted that although Plaintiff reported difficulty with memory, comprehension, completing tasks, and following instructions, these complaints were not fully consistent with Plaintiff's self-reported ability to work on the computer, read, and serve as a board member for local organizations including Washington County Mental Health Services and the Vermont Autism Task Force. He also noted that Plaintiff scored twenty-nine out of thirty on a mini-mental status exam administered by Dr. Brock in September 2014, indicating no cognitive impairment.

The ALJ accorded little weight to Dr. Brock's opinions regarding Plaintiff's mental impairments, finding them inconsistent with Plaintiff's performance on mini-mental status examinations and noting that Dr. Brock is not a psychiatrist. Although Plaintiff's treating psychiatrist, Dr. Zaur, did not provide a medical source opinion, his treatment records reflect that Plaintiff's depression responded to treatment with medication and that her symptoms improved when the significant familial and economic stressors she faced abated. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 9 (2d Cir. 2017) (holding that RFC determination based on a "year's worth of treatment notes" from treating physician was adequately supported by substantial evidence).

Citing Dr. Black's opinion that Plaintiff could tolerate a mid-level occupation and the state agency consultants' opinions that Plaintiff experienced only temporary, episodic difficulties as a result of her ADHD, the ALJ chose this evidence to support Plaintiff's RFC. *See Burgess*, 537 F.3d at 128 ("Generally, the opinion of the treating physician is not afforded controlling weight where the treating physician issued opinions that are not consistent with the opinions of other medical experts[.]") (internal alterations and citation omitted). Where the medical opinions and other evidence are not in complete agreement, the Social Security Administration empowers the ALJ to resolve "[g]enuine conflicts in

the medical evidence[.]" *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing *Richardson*, 402 U.S. at 399). "The fact that the assessed RFC does not perfectly correspond" with any single medical source opinion "does not require remand, particularly where the ALJ explained, in detail, how he arrived at" his determination. *Martino v. Comm'r of Soc. Sec.*, 339 F. Supp. 3d 118, 126 (W.D.N.Y. 2018). Because the ALJ's decision is "[b]ased on a thorough examination of . . . [Plaintiff's] relevant limitations and restrictions," Plaintiff's motion for remand on the basis that the ALJ's mental RFC determination is not supported by substantial evidence is DENIED. *Cichocki*, 729 F.3d at 178.

### C.   Whether ALJ Merrill's Determinations Concerning Plaintiff's Physical Impairments Are Supported By Substantial Evidence.

Plaintiff contends that the ALJ's determination that her back condition is not severe and imposes no functional limitations is not supported by substantial evidence and reflects the ALJ's improper weighing of the medical and non-medical opinions in the record. A "severe" impairment "significantly limits the plaintiff's ability to do basic work activities" that are "necessary to do most jobs." *Burgos v. Berryhill*, 2018 WL 1182175, at *2 (D. Conn. Mar. 7, 2018) (quoting 20 C.F.R. §§ 404.1520(c), 404.1521(b)). The severity determination at Step Two is "intended only to screen out the very weakest cases." *McIntyre*, 758 F.3d at 151 (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). "[W]hen functional effects of impairments . . . determined to be non-severe at Step [Two] are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments," any error in the severity determination is harmless. *Snyder v. Colvin*, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014).

In 2011 and 2012, Plaintiff reported back spasms associated with sitting at her computer for twelve hours a day, five days a week. She was diagnosed with a lumbar strain due to the ergonomics of her workplace environment, and received an injection of Toradol. In August 2012, an x-ray revealed moderate narrowing of the disc spaces in Plaintiff's lumbar spine, small oseteophytes, and sclerotic changes at the L5-S1 joint, while a physical examination found that Plaintiff had a normal range of motion in her

spine as well as normal gait, strength, muscle tone, and reflexes. She was prescribed

Tramadol and completed physical therapy to treat her back pain until November 2012,

when she was discharged upon achieving her short- and long-term goals. Plaintiff's

treating primary care physician, Dr. Brock, noted in April 2013 that Plaintiff's lower limb

radicular symptoms were much improved through physical therapy and treatment with

Tramadol and cyclobenzaprine.

In evaluating Plaintiff's physical impairments, the ALJ afforded "substantial

weight" to the opinions of non-examining state agency consultants Francis Cook, M.D.,

who opined that Plaintiff's impairments were non-severe, and Geoffrey Knisley, M.D.,

who opined that Plaintiff could perform medium work with restrictions on heavy lifting

to avoid exacerbating her back pain. (AR 500.) Although Dr. Cook and Dr. Knisley did

not review all of the medical evidence in the record, the ALJ noted that they are familiar

with the Social Security Administration's rules and regulations and found their opinions

consistent with Plaintiff's "primarily normal musculoskeletal examination" results. *Id.*

Consultative examiner Roger B. Kellogg, M.D. evaluated Plaintiff in April 2013

and noted that Plaintiff described herself as a "mental train wreck" but "otherwise

physically feels fine." *Id.* at 324. Dr. Kellogg found Plaintiff was able to bend and touch

the floor, tip from side to side, and get on and off the examining table easily. She had no

pain or pressure in her lower back and no sciatic notch tenderness. Her straight leg raises

were unremarkable and her deep tendon reflexes were normal.

Plaintiff asserts that ALJ Merrill erred in weighing three state agency opinions that

concluded Plaintiff's back impairment is non-severe. Non-examining consulting

physicians Dr. Cook and Dr. Knisely opined that Plaintiff had no severe physical

impairments, and Dr. Knisely recommended that Plaintiff could lift or carry up to fifty

pounds occasionally and up to twenty-five pounds frequently. This level of exertion is

consistent with "medium work" as defined by SSA regulations. 20 C.F.R. § 404.1567(c)

("Medium work involves lifting no more than [fifty] pounds at a time with frequent

lifting or carrying of objects weighing up to [twenty-five] pounds."). Dr. Kellogg found

no abnormalities upon examination of Plaintiff's back, noting that Plaintiff experienced

pain "every [three] months or so if she sits too long" and "can avoid it by staying relatively active, not sitting too long, . . . walking if necessary[,]" and by taking her prescribed medication. (AR 324.)

Plaintiff further contends that the ALJ erred in his consideration of the opinions of Dr. Brock and G. Mark Coleman, OTR/L, who opined that Plaintiff is limited to lifting no more than ten pounds. As a preliminary matter, Plaintiff acknowledges there are two opinions from Dr. Brock in the record that are not entirely consistent. (*See* Doc. 4 at 8 n.1) (explaining that Plaintiff "focus[es] on the later opinion"). In July 2013, Dr. Brock opined that Plaintiff could frequently lift and carry less than ten pounds, occasionally carry ten to twenty pounds, and rarely to never carry fifty pounds. Records from Plaintiff's December 2013 functional capacity evaluation by Mr. Coleman reflect that Plaintiff lifted twenty pounds "but felt she could manage that amount about [once] per hour" and carried ten pounds for fifty feet, reporting she "felt that she could manage [fifteen] [pounds] a couple of times per day." (AR 427.) In both cases, Plaintiff's capacity was noted to be "[l]imited by reports of low back pain." *Id.* In July 2014, Dr. Brock opined that he "concur[red]" with Mr. Coleman's proposed ten-pound lifting restriction. *Id.* at 491.

In affording little weight to Mr. Coleman's opinion that Plaintiff could occasionally lift up to ten pounds, the ALJ noted that Mr. Coleman is not an acceptable medical source and examined Plaintiff on only one occasion. *See Diaz v. Shalala*, 59 F.3d 307, 314 (2d Cir. 1995) (holding an ALJ "has the discretion to determine the appropriate weight to accord" to a non-medical source opinion). The ALJ further considered that although Dr. Brock is Plaintiff's treating physician, both Dr. Brock and Mr. Coleman based their lifting limitation on Plaintiff's self-reports of pain which were inconsistent with the conservative treatment she received and primarily normal physical examination results. Where a treating physician's opinion is "inconsistent with the other substantial

evidence in the case record[,]" it is not entitled to controlling weight, *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (citation omitted).[4]

The ALJ also considered that Plaintiff testified she could "sometimes . . . lift something quite heavy, . . . [thirty] to [forty] pounds even," to spare her husband from exerting himself and that effort would not "necessarily trigger a back attack" for Plaintiff. *Id.* at 537. Although Plaintiff asserts that the ALJ took her testimony out of context, the hearing transcript reveals that Plaintiff made no reference to "an emergency situation" (Doc. 4 at 9) and explained that lifting does not trigger her back pain "regularly enough" for her to conclude that she should not lift a specific amount of weight. (AR 537.) ALJ Merrill acknowledged that Plaintiff's impairments could reasonably be expected to produce some back pain, but determined that her reported abilities were inconsistent with relevant considerations including her wide range of daily activities, the frequency and duration of the pain, the course of treatment, and other evidence in the record. *See* 20 C.F.R. § 404.1529(c) (outlining procedure for evaluating reports of symptoms and pain and identifying factors to be considered). "[T]he ALJ's decision not to credit [Plaintiff's] subjective [reports] regarding [her] symptoms was appropriate" where those reports were "not supported by the objective medical evidence or evidence regarding [her] daily activity[.]" *Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013).

ALJ Merrill's determination that Plaintiff could work at a medium level of exertion with no additional physical limitations is thus supported by the opinions of three physicians, as well as plaintiff's own testimony, reports of symptoms, reports of daily activities, and normal examination results. The medical evidence supports the ALJ's determination that Plaintiff's back pain was relatively well-controlled and imposed no more than minimal limitations on her ability to work. The ALJ also accounted for

---

[4] Plaintiff asserts the ALJ erred because he did not discuss the fact that Dr. Brock considered Plaintiff's 2012 spinal x-ray in rendering his second opinion. An ALJ who gives less than controlling weight to a treating physician opinion need only set forth good reasons for doing so and "is not required to address every piece of evidence submitted." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). In his decision, the ALJ expressly referenced the x-ray in question.

Plaintiff's back pain in formulating her RFC notwithstanding his conclusion it was not a severe impairment by limiting her to medium work "in deference to the testimony of the claimant regarding her physical limitations." (AR 502.) As "the written determination contains a thorough and lengthy discussion" of Plaintiff's back pain and the RFC includes a limitation to accommodate that condition, any error in the ALJ's Step Two determination was harmless because  his RFC finding is supported by substantial evidence and properly concludes that Plaintiff's past relevant work does not exceed her exertional limits. *Smith v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 270, 278 (W.D.N.Y. 2018) (finding harmless error where ALJ considered conditions determined to be non-severe in subsequent analysis).

For the reasons stated above, Plaintiff's motion to reverse the Commissioner's decision based on the ALJ's assessment of Plaintiff's physical limitations must be DENIED. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (affirming ALJ's decision and noting it was "well supported" notwithstanding "some conflicting medical evidence"); *Veino*, 312 F.3d at 588 (finding "it was within the province of the ALJ to resolve [conflicting] evidence in the way that she did").

### D.      Whether Remand for the Calculation of Benefits is Warranted.

Plaintiff points out that her action for benefits has been pending for nearly six years and requests that her case be remanded for the calculation of benefits because the record evidence shows she is limited to sedentary or light unskilled work, which she contends mandates a finding that she is disabled. A remand for benefits cannot be ordered merely because of the passage of time. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996) ("[A]bsent a finding that the claimant was actually disabled, delay alone is an insufficient basis on which to remand for benefits."). Instead, a remand for the calculation of benefits is only warranted where "the records provide[] persuasive evidence of total disability that render[s] any further proceedings pointless." *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999); *see also Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990) (remanding for calculation of benefits where there was an "infinitesimal likelihood that employment of any kind would be available" to claimant).

15

Because the ALJ's decision that Plaintiff is capable of performing her past relevant work is supported by substantial evidence, Plaintiff's request for a remand for the calculation of benefits must be DENIED.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reverse the decision of the Commissioner (Doc. 4) is DENIED and the Commissioner's motion to affirm (Doc. 5) is GRANTED.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this __27th__ day of July, 2020.

Christina Reiss, District Judge
United States District Court